**CHICAGO TYPOGRAPHICAL UNION NO. 16, et al., Plaintiffs,**

v.

**STANDARD RATE AND DATA SERVICE, INC., Defendant.**

No. 83 C 7082.

United States District Court, N.D. Illinois, E.D.

March 1, 1984.

Gilbert A. Cornfield, Cornfield & Feldman, Melissa J. Auerbach, Chicago, Ill., for plaintiffs.

Ronald Wilder, Lisa A. Weiland, Michael Brody, Schiff, Hardin & Waite, Chicago, Ill., Richard A. Zansitis, New York City, Melinda M. Sweet, MacMillan, Inc., New York City, for defendant.

### DECISION

McMILLEN, District Judge.

Defendant has filed a motion for partial summary judgment on Counts I and III of

the complaint in this case. Count I seeks an order requiring the defendant to arbitrate the dispute involving termination benefits to the three individual plaintiffs. Count III seeks payment of the benefit to the individual plaintiffs on the basis of a contract for personal services. Our jurisdiction is alleged to arise under § 301 of the Labor Management Relations Act which gives us jurisdiction over "suits for violation of contract between an employer and a labor organization...." 29 U.S.C. § 185.

■ The three individually-named plaintiffs are the only parties for whom relief is claimed in Count III. We find and conclude that defendant's motion should be denied, pursuant to such cases as *Hines v. Anchor Motor Freight*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976) and *Baker v. Amsted Industries, Inc.*, 656 F.2d 1245 (7th Cir.1981), *cert. denied*, 456 U.S. 945, 102 S.Ct. 2011, 72 L.Ed.2d 468 (1982). These cases only preclude suits by individual employees if arbitration has been bypassed. Count III is an alternative if arbitration is not provided for.

■ The defendant's motion for partial summary judgment on Count I raises a more complex issue. Defendant contends that the letter agreement dated November 19, 1982 upon which the plaintiffs apparently base their claim is not subject to arbitration. This letter, which is attached as Appendix B to the complaint, does not contain an arbitration clause but was entered into before the principal contract between the parties had expired on June 6, 1983. Defendant's operations were terminated on August 5, 1983.

The letter of agreement dated November 19, 1982 grants the same benefits to plaintiffs as were contained for other employees in Article III of a "Supplemental Agreement" dated April 2, 1981. However, the letter does not incorporate the Supplemental Agreement. Its limited reference to that Agreement is merely to define the termination benefits for the three plaintiffs.

Plaintiffs contend that this letter is merely an extension of the Supplemental Agreement of April 2, 1981 which is subject to arbitration because of the arbitration clause in the existing collective bargaining agreement between the same parties. We find against plaintiffs on this contention also.

The supplemental agreement is attached as Appendix C to the complaint and was apparently mistakenly referred to as an agreement of April 3, 1981. It does not contain an arbitration clause. The first paragraph defines the document as "supplemental to the Collective Bargaining Agreement ... effective June 7, 1979 through June 6, 1983," a copy of which was attached to the supplemental agreement.

The Collective Bargaining Agreement itself is attached as Appendix A to the complaint and does contain a rather complete arbitration clause in paragraph 7. The clause provides that "Alleged violations of this Agreement," if not adjusted between the parties, are to be referred to the Industrial Commission for adjustment. If that fails to resolve the matter, the Commission is to select an arbitrator who will act as chairman of the Industrial Commission and reach a final and finding decision on the controversy. Unless paragraph 7 is somehow carried over to the letter of agreement which plaintiffs sue on herein, it must be limited to violations of the collective bargaining agreement.

The supplemental agreement of April 2, 1981, which does not contain an arbitration provision, does contain the following clause entitled Article VI—Conclusion:

The Union and the Employer agree that this Agreement is ongoing and is not subject to amendment except by mutual agreement between the parties. The parties further agree that this Agreement is intended to fully resolve the pending grievance and unfair labor practice charge which the Union has filed against the Employer, as well as any other claim which the Union may now have against the Employer, arising out of the proposed changes in the Employ-

er's composing room operation. In the event the Employer or Union hereafter abrogate any provision of this Agreement, it is agreed that the other party will have as the sole remedy the option to declare this Agreement to no longer have any force or effect and, if the Employer is the party who has abrogated the Agreement, the Union may then also claim, without recourse to Article V, Grievance-Arbitration Procedure, of the UEA Agreement, jurisdiction over the keyboarding of editorial data.

The foregoing clause specifically *excludes* arbitration under Article V of a document which has not been filed by either party. There is no indication in the supplemental agreement that any prolongation of the dispute by arbitration was intended. This is further evidenced by the failure to specifically incorporate the terms of the existing Collective Bargaining Agreement into the supplemental agreement. We find that the supplemental agreement was a separate contract which is not subject to arbitration, since arbitration is an exception to the usual method of resolving disputes and must be detailed in writing in order to be specifically enforced.

Even if the arbitration provision in Section 7 of the Collective Bargaining Agreement somehow applies to the letter of agreement involved in this case, we note that it has several conditions precedent to it, including submission of the dispute to the Industrial Commission and the appointment of an arbitrator by that Commission. Plaintiffs do not allege that these conditions precedent to arbitration have been complied with, although the Union made a suggestion of arbitration by its letter of August 23, 1983 (Appendix F to the Complaint). Defendant has not raised this issue and also has refused to participate in any grievance procedure, according to its letter of September 1, 1983 to the Union president, but that would not prevent the Union from unilaterally submitting the matter to the Industrial Commission for resolution. Since the steps leading up to arbitration are adopted for the purpose of attempting to resolve a dispute before the expensive and time-consuming procedure of arbitration is engaged in, it is our opinion that the Union is required to exhaust these steps before it is entitled to specific performance. Therefore, even if the letter of agreement is subject to arbitration, plaintiff has not alleged performance of the conditions precedent.

We are aware of the federal policy to resolve disputes between employers and labor unions by arbitration when agreed to between the parties, although this does not necessarily extend to terminated employees. See *Anderson v. Alpha Portland Industries, Inc.*, 727 F.2d 177 (8th Cir.1984). We are also aware of a tendency to consider parol evidence in aiding in the construction of ambiguous collective bargaining agreements, as in *Mohr v. Metro East Manufacturing Co.*, 711 F.2d 69 (7th Cir. 1983). However, the parties have found no case in which parol evidence was used to *supply* an arbitration clause in a written agreement where one did not exist and where arbitration was specifically negated in one portion of a related earlier agreement. Nor have the parties adduced any evidence by way of affidavits or depositions which they contend would clarify or change the written language of the supplemental agreement. Construction of written contracts is a matter of law to be decided by the Court, and we find no genuine issue of material fact to be decided on Count I. In short, the Supplemental Agreement and the subsequent letter of agreement dated November 19, 1982 are integreated documents which are separate from the basic Collective Bargaining Agreement between the parties and which do not provide for arbitration.

Therefore we grant the motion of the defendant for summary judgment on Count I and deny its motion as to Count III of the complaint. We will hold a status report on this case on Monday, March 19, 1984 at 11:00 a.m.